We'll hear the final case on the calendar, Douglas v. City of New York. Thank you. Good morning, Your Honors. May it please the Court, my name is Jeffrey Rothman. I represent the Plaintiff Appellant Ariel Douglas. In ruling upon the Defendant's motion for summary judgment, in numerous instances, the District Court erred by considering the facts and drawing inferences from the facts in the light most favorable to the Defendant's rather than in the light most favorable to the Plaintiff's as is required in adjudicating summary judgment motions. In fact, the District Court treated the facts set forth in the Defendant's Local Rule 56.1 Statement as undisputed, in a footnote on the first page of the decision, when many of those facts were specifically disputed in the Plaintiff's detailed 56.1 Counter Statement. The District Court also simply ignored a number of facts that were favorable to the Plaintiff. If the facts and the inferences are viewed in the light most favorable to the Plaintiff, they set forth the following scenario. That on the morning of October 14, 2011, the Plaintiff was wearing a neon green hat, conspicuously identifying himself as a legal observer at an Occupy Wall Street demonstration where the— Excuse me for interrupting. There are videos in this case that have been presented. Could you tell us from your point of view what those videos undisputably show? As the Court is aware, the Plaintiff moved for partial summary judgment with regard to what is shown on the video unequivocally, which is that after Mr. Douglas kicks the scooter, which was, according to his version of events, parked on top of him at the time, he was dragged by Officer DeFrancesca, who had gotten off the scooter and who had not asked him in any way, shape, or form if he was all right, made any inquiry of why he was screaming under the scooter. He was dragged some feet, flipped over onto his stomach, and then Officer DeFrancesca, as is clearly seen in the video footage, takes his nightstick and uses it to mash Mr. Douglas' face into the pavement. Officer DeFrancesca has admitted that he did this for about 20 to 30 seconds, which is a long period of time. You also see on the video footage Sergeant Burns bending Mr. Douglas' arm in an awfully unnatural—it makes you wince to look at it. He lifts his right arm up and jacks it down in a birdwing motion that the arm is not meant to do. Then you see, after Mr. Douglas is lifted up, a puddle of his blood on the pavement. Did you see in that video, any of the videos I thought I had, that some officer punched him in the head while he was— No. This is one aspect of the force that was not only disputed, but it was not mentioned at all by Judge Carter. There's an allegation by Mr. Douglas that while he was on the ground, gloved hands gripped his head. There was no allegation of a punch. It was that gloved hands gripped— Did you see a punch in the video? Did I see a punch in the video? I did not. I've watched the video numerous times, but— I watched it this morning again, and I thought I saw that. A punch by who, Your Honor, if I may? One of the officers. I've watched it innumerable numbers of times, but that has escaped me. That's never been a part of the litigation. Maybe I should watch it again more carefully. The allegation that is not captured on the video footage because there's movement and it becomes blocked at various points. The different angles. There's multiple videos showing what occurred. But Mr. Douglas alleges that Sergeant Burns put his gloved hands on either side of his head and smacked his head three times— You say that from the videos the facts are indisputable, that there was excessive force. Is that the basis for your— That there was excessive force by Officer DeFrancesca and that there was a failure to intervene by Officer Allen, who stood by and watched, and by Sergeant Burns, who was bending his arm there. That was the only aspect of where plaintiffs moved for summary judgment because there's fact disputes about everything else. On the question of whether your client was trapped by the scooter, you introduced—you had two witnesses. Correct me if I got it wrong. You have two witnesses saying your client was trapped. Yes, Your Honor. Did your adversaries offer witness testimony to the contrary? Not exactly. The witness, Marino, who there is a disc that's been filed confidentially. I put a note that I think it should be not filed under seal, but that's not for my remaining two minutes. But on that recording and in the deposition testimony, under my questioning, Mr. Marino states that he really doesn't know why Mr. Douglas was putting his legs under the scooter and that he couldn't tell whether or not he was or was not trapped. But the two witnesses that a plaintiff has put forth, Peter Beadle, an attorney, and Timothy Schwartz, have both stated unequivocally that he kicked the scooter because it appeared that he was trapped under the scooter. And the district court looked at the video and said, well, the video shows that he wasn't trapped under the scooter, but the video doesn't show that. You can't tell from the video one way or the other whether he is or is not trapped under the scooter. If there is at least some difference of view, why isn't there an arguable probable cause? Well, because Officer DeFrancesco created this situation. Under the plaintiff's version of the facts, Officer DeFrancesco rode into this crowd of people aggressively, then purposely accelerated his scooter into Mr. Douglas, which is itself an act of excessive force. Then purposely ran over his left ankle or foot area, which is another act of excessive force which the district court did not address. Then, knowing that he had just struck Mr. Douglas with his own motor scooter and saw him screaming on the ground and parked the scooter at an angle where it tilted onto his right leg, got off the scooter, made no inquiry of him whatsoever, didn't say, sir, are you all right, can I be of some assistance, calm down, everything's going to be okay, immediately walked off to attend to a crowd. And the district court also interpreted the condition of the crowd in the light most favorable to the defendants. Your response to, or at least a part of your response to Judge Katzmann's question would be that even if it did establish probable cause because of ambiguity, that would not rebut the part of your case that depends on inflicting pain on him by running over him with a scooter. Well, that is partially my response. In terms of the arguable probable cause... You argue against probable cause as well, but even if there is probable cause, that has nothing to do with the injury inflicted by the... That is correct. Even assuming arguendo there's probable cause or arguable probable cause, the force here that was used by Officer DeFrancesca was unreasonable under any circumstances based on the undisputed facts and... There are two entirely separate... Correct. ...issues of moments of application of force. That is... With the scooter, and then as a result of what was done with the scooter on both sides, the later arrest and forcing him to the pavement with the nightstick. That is correct. They are separable. But just to get back to the arguable probable cause issue, there's no arguable probable cause if an officer knows that he has violated the Constitution. Under these circumstances, there was an intentional assault on Mr. Douglas with the scooter. It was intentionally left on him. What's the evidence that he intentionally did it rather than accidentally with the scooter? You see from the video that the scooter lurches forward into Mr. Douglas, and you can see his body falling. You then see him screaming on the ground, and then you see the scooter lurch forward again and goes at that point over his ankle, which is blocked by the video. If the facts and the inferences are taken in the light, most favorable to the plaintiff if it was intentional. But even if it was not intentional, even if it was a resume arguendo that it was an accident, he didn't mean to hit him and he didn't mean to run him over, make some inquiry. You have a man who's obviously in an extreme emotional state under the scooter. Get off the scooter and say, Are you all right? What's going on? Calm down. Can I help you? Can I help? Are you trapped? Are you stuck? There was none of that. Even if the officer was aware that his scooter had harmed the plaintiff, that wouldn't detract from the probable cause if the plaintiff then kicked over the scooter. You could still arrest. Even if the police officer has caused harm to the plaintiff, if the plaintiff then kicks over the scooter in a manner that can appear to be gratuitous or in vengeance against having been harmed previously, it's still something you can be arrested for under probable cause. Well, the criminal mischief statute states that if one has a reasonable ground to believe that he or... Not a reasonable ground. The fact that you have been harmed previously is not a reasonable ground to cause damage to the police scooter. Not to cause damage for the purpose of causing damage, but to cause damage in order to free oneself from... Assuming that the officer knew that he was trapped, that the kick of the leg was trying to get himself out from being trapped, as opposed to an act of revenge for having anger and revenge for having been hit and harmed by the scooter. Well, that is really the fact dispute here. What did DeFrancesca know and what would a reasonable officer know or consider under the circumstances? Under the plaintiff's facts. And under the plaintiff's facts, a reasonable officer would, before he just left him screaming under the scooter, make some inquiry as to, is he okay? There was no rush. When he went off to attend to the crowd, only DeFrancesca at that point went off to attend to the crowd. None of the other officers there were concerned with any crowd surging forward. It was only after DeFrancesca grabbed Mr. Douglas and dragged him to the place where he was brutalized that the other officers then stepped in and started to push the crowd back. So it's really a fact issue. At a trial, the jury can consider whether or not DeFrancesca had a reasonable basis to think he wasn't trapped. But we have evidence. We have witnesses, as well as the plaintiff's testimony, as well as the video footage, which I think helps us to show that Mr. Douglas's leg was trapped under the scooter and that DeFrancesca was certainly in a position to know that since he's the one who put him in that position and was right on top of him and abandoned him in that position. I see I'm considerably over my time. Thank you. Thanks. May it please the Court, Jason Anton on behalf of the City of New York and the City Defendants. In the midst of a tense and chaotic protest, Plaintiff Ariel Douglas kicked over and visibly damaged a police scooter. Moving quickly to prevent further escalation, officers acting on their own reasonable beliefs promptly pulled the plaintiff from the crowd and arrested him. Their actions are firmly protected by qualified immunity, and the District Court thus properly granted summary judgment. Can I ask you about the crowd? Yes, of course. The video seems to indicate that the crowd is basically photographers taking pictures, videotaping the plaintiff's arrest. Where was the risk of violence? I think, first of all, it's a mix of people. There are several photographers there, and that's clear from the video, Your Honor. I think the YouTube video in particular that we cite in our brief indicates the increasing aggression of the crowd. Initially, you have— How many people were in the crowd? So the plaintiff estimates, I believe it was 30 to 50. I could go back and find the exact citation that he estimated. And that's initially when there is the sort of horseshoe of people forming around the back of the police van. There's the protest you see initially, which is the chant of, Let them go, as police march two or three arrestees towards this police van to load them in. Once the arrest starts to take place, you hear several curse words, What the F is your problem? You see a bottle thrown, a garbage bag thrown at police officers. So it is steadily escalating. And certainly once Officer DeFrancesca got off of his scooter, he immediately was trying to keep the crowd back, as other officers were. It's during his attempt to do that that Ariel Douglas here kicked over the police scooter. I know you make it sound like Douglas, you know, was dropped in from the moon, and he walked over to the scooter and kicked it off. What do you make of the fact that he was lying on the ground for whatever reason and kicked it over from that position? You don't think that has any significance? I think Judge LaValle hit the nail on the head here in that, first of all, I don't think that there's no obligation. He is not the defense lawyer. That's certainly correct. And as we argued in our brief, there's no obligation, first of all, on behalf of officers to investigate the circumstances to try to speculate as a plaintiff's state attorney. No, no, but I'm saying you're making a presentation. Yes, Your Honor. And you're completely not mentioning this fact that when he kicks over the video, he's lying, whatever, if he's trapped or whatever, but he's lying on the ground seemingly under the scooter. How do you account for that? As to why he's underneath the scooter? Yeah, exactly. So I don't think it, as far as probable cause is concerned, and I will address Your Honor's question, as far as probable cause is concerned, it has to be clearly apparent to the officers on the scene that there was a justification or right for kicking over the scooter in order for them to not believe that there was a fair probability. So if you're Officer Francesca and you know that you have rolled the scooter over onto his leg and the scooter right now is holding his leg down so that he can't move it and you see that what he does is he kicks to try and free his leg and that knocks over the scooter, do you have probable cause to arrest him? In that circumstance, if it was clear that he was trapped, I'm not sure. Clear to Francesca? Clear to the person who had rolled the scooter, assuming that it was on his leg. Which is certainly the relevant inquiry. And this was apparent to Francesca. Does Francesca have probable cause to arrest him? The New York case law that I've seen on it. No, no, just the answer to the question. As to whether he has probable cause to arrest him, it would have to be clear even in that circumstance, when he knows that he's trapped and that he kicked it over, it would have to also be clear that he had a right to damage a police scooter. And I'm not sure that's the case. Wait a minute. What are you saying? He would have to have a... He could kick it if he didn't damage it? No, so the issue here, so for criminal mischief in the fourth degree, you have to have a reasonable ground to believe that you have a right to kick it over. Well, on Judge LaValle's facts, his foot is stuck under the scooter, so he... Screaming in pain. Yeah. I think even in that scenario, there may be a necessity to say, you know, help, I'm trapped or I'm stuck. I'm not sure. You're not sure what? As to whether there would be probable cause in that scenario. There might be arguable probable cause, which still would be protected by qualified immunity here. How would you get to either probable cause or arguable probable cause? Certainly it's still kicked recklessly, which is the required state of mind under the criminal mischief in the fourth degree statute. You think it's reckless to free yourself from under the scooter? I think instead of perhaps saying I'm stuck under the scooter and asking... Oh, you have to say, oh, excuse me, officer, could you come over here because I'm stuck under this, the very officer who stuck him, so to speak, and who walked away from the scooter. Your Honor... You think that's, does it make any sense to you? Perhaps not. Perhaps in that circumstance, perhaps there would not be probable cause. But in the circumstances here, it was certainly not clearly apparent to the officers that Ariel Douglas was trapped underneath the scooter. And there were a few... You say the officers. The questions that we've been asking you was not about the officers, plural. It was about one officer, the one who hypothetically may have rolled the scooter over onto his leg so that it was pinning his leg down and he was screaming in pain. That's the officer we're asking you about, not the other ones. Right. And I think the totality of the circumstances did not make it clearly apparent to him that there was a right to kick over the scooter at that point. And the reason being, first of all, we see the video evidence of a plaintiff pulling his leg back from the front of the scooter and inserting a leg back behind it. We see the right foot abutting the back tire in the video. You saw it, but the officer couldn't have seen it because he was off doing crowd control. He testifies as to, and you can see what he did with his scooter, is he moves forward and then hits something and then moves his scooter back a bit before departing that scooter and getting up to do crowd control. Even if we were to accept your argument about probable cause or argue a probable cause, aren't there still nevertheless questions about whether there was an excessive use of force? I think excessive force is yes. I don't think there are questions that I think the district court properly granted summary judgment, but I'm happy to address excessive force. And I think there are two separate instances, as Judge LaValle noted. There's the impact initially with the scooter, and then there is the arrest and the force that was used in the context of that arrest. In that context, was it only me? Did you see any officer while he was lying on the ground? I'll get more specific. Come over to him, lean over to him wearing a white shirt on his left side and punch him with his left fist in the head? I think I recall the moment you're referring to, and I don't mean punch, Your Honor. I do see the officer comes in and I think grabbed his arm and pushed it down to the ground. Well, I mean, that's a question of fact, I would say. Plaintiff doesn't argue otherwise that he was lying on the ground. Well, he didn't see it, but you did, and I did. There's no allegation before the district court either that there was a punch that occurred at any time. So I don't see that from the video, nor do I think it's been argued that it occurred during the video. But you know exactly what I'm talking about. I think there's an instance in the video, Your Honor, where the officer grabs the arm and pushes it down to the ground when they're attempting to immobilize a plaintiff when they're performing the arrest. Now, certainly broadly in the context of excessive force, as we argued in our brief, the court is well familiar with the objective reasonableness test and how qualified immunity is particularly broad in excessive force scenarios because of the difficulty of drawing a line between when force is reasonable and when it is excessive in a particular circumstance. It might be that this is that one case that is over the line. I don't think so, Your Honor. And I think it's first of all because of the split-second judgments that officers had to make in this case. They had a tense and uncertain scenario, as I was discussing previously, with regard to a crowd that was getting increasingly angry. The officers had to effectuate arrest quickly against what they perceived reasonably as a violent suspect because the suspect had kicked over police property and damaged it. But they also wanted to make sure that others in the crowd would not emulate the plaintiff's behavior as things began to escalate. But what is there that suggests that a violent mob was gaining force? I don't mean to suggest it. Apologies, Your Honor, for pouring myself some water. I don't mean to suggest there's a violent mob, but I think it is clear from the video, Your Honors, that the situation was escalating when you start to have objects being thrown at police officers. You have 10 officers also on site, right, who seem to be very calm and collected. Certainly. There were other officers. I'm not sure calm is how I would characterize their behavior and that they were screaming get back and trying to move the crowd backward. But certainly I think they were reasonable in perceiving a threat and perceiving a threat from the plaintiff and were making a very quick decision in tense circumstances. I think also you have the lack of evidence of maliciousness as to the officers in this context and that as they testified to they pulled a plaintiff away from the crowd initially in order to ensure that his safety was protected, that the officer's safety was protected. So they did that for his safety? Yes, because trying to arrest someone certainly when surrounded by a crowd, when the crowd is right on top of you, can be dangerous. They moved him into the police perimeter that had been established that Officer DeFrancesco was initially trying to establish in order to effectuate the arrest. He didn't, Douglas didn't resist arrest, did he? The district court found, indicated that the video didn't indicate any resistance. Certainly the officers testified as to resistance and there is an instance when Douglas does raise his neck up and that's when he is pushed back to the ground in order to immobilize again the suspect to effectuate an arrest. The officers do testify as to feeling him put his hands, or cross his hands behind his back to make it difficult to arrest but you can't see it from the video because there are some obstructions that come by in both of the videos as officers walk through. But as to the initial instance of arrest, and I see I'm out of time, I'm happy to address the excessive force claim if I might. As to the hitting with the scooter itself, there are two issues. First of all is intentionality. The video makes very clear that Officer DeFrancesco on his scooter as he moves towards the corner of the police van is hitting his horn, it's blaring. And it happens when he stops the scooter very close to the corner of the police van. He's still hitting the scooter's horn to try to make people clear a path. He even testifies to saying, you know, get out of the way. Now Plaintiff doesn't hear any of this as he testifies in his deposition. But the fact that those statements were made and then Officer DeFrancesco moves slowly forward as you can see from the video and then makes impact suggests that he did not intentionally or want to make impact with Plaintiff. And even Plaintiff in his deposition indicates that he wasn't sure whether it was intentional or not. It was just a conclusion that he was drawing because of the fact that he was hit. In fact, Plaintiff just describes it as a glancing blow, not a direct hard impact with a scooter. Second of all, even if he was impacted intentionally, I don't think the force was clearly excessive in these circumstances. And I've laid out the context. I don't need to repeat it as to the, you know, really... You mean the force from the scooter? The force from the scooter. It's an intense circumstance. I think it's...  his leg was caught under the back wheel of the scooter? I don't think so, Your Honor, because... You still say that was not excessive? I don't think it was... Again, there's the intentionality problem here and I think even for that trapping the Plaintiff's leg, the fact that Officer DeFrancesco moves the scooter back again after hitting some object that obstructed him from moving forward is evidence that he didn't intend to trap anyone underneath. But also, crowd control more generally is certainly a reasonable police tactic when they're trying to load arrestees into the back of a police van as a crowd is, according to Plaintiff's own testimony, gathering behind a police van, where Plaintiff didn't heed a warning that he was given, which is relevant from this Court's Brown case. He moves at a very low speed. If the Plaintiff didn't kick the scooter over, he'd still be lying on the ground, so to speak. Nobody would... When were they planning to get back to him? I'd be speculating, Your Honor, but certainly I think it was reasonable for officers to attempt to control the crowd first because of the safety risk, and then perhaps... As opposed to the guy who's lying on the ground screaming. And then they could attend to him, and perhaps once they've secured the perimeter, which was breaking down at that point, that's why Officer DiFrancesca got off his scooter. As to the arrest, the second component of the excessive force claim, again, as I mentioned, police needed to conduct a quick and decisive response to police-directed aggression to de-escalate a chaotic situation and control the violent suspect. That is quintessentially what qualified immunity is designed to protect. So certainly, first of all, force was permitted in this circumstance, some degree of force, and plaintiff doesn't contest this. Plaintiff took aggressive action against police property. It was an action that others could emulate and a situation that was escalating, and therefore police needed to take some action to effectuate the arrest and immobilize the suspect and do so quickly. So as I mentioned, they moved the plaintiff from the crowd for his safety and for the safety of the officers and then went to immobilize him, but they had no time to calibrate the precise amount of force that they should use in that circumstance. They knew they had to get him arrested quickly, didn't know how strong he was. What does that mean? I don't understand what you just said. What does it mean to have no time to calibrate what is a reasonable amount of force to use? So that means, the way I interpret it, it means you could use any amount of force because I don't have enough time to think it through, so I smack the guy over the head with the nightstick. I don't think that's true, Your Honor. So what does it mean? That's what I'm asking. You don't need to determine what is the least amount of force possible to accomplish the goal you're trying to accomplish in a particular circumstance. What they did is they tried to hold him down when he craned his neck up, which can make it easier to move around. They moved him back down into the ground and arrested him quickly. They didn't have to determine what the least possible force, but rather just a reasonable or at least what was not beyond debate unreasonable to effectuate that arrest in that circumstance. And also, I think what's relevant to the excessive force inquiry is the relatively little injury that occurred. It is certainly unfortunate that Plaintiff received a laceration on his head and that it was bleeding. It required a couple of stitches. There were no other medical treatment other than a tetanus shot that he received, no future medical treatment that he required. His medical records themselves indicated no bruising or swelling. It was just soft tissue injuries, no deformity, I should say. And in those circumstances, we think that there's no excessive force used. And I'm happy to address failure to intervene or the Monell claim if the Court would like, but otherwise we'll rest on our briefs. Thank you. Just to address a few of the points raised by opposing counsel. The only time that the crowd began to get unruly in any way that involved anything that potentially smacked of violence was after Mr. Douglas began to be brutalized. And people in the crowd, you can hear them on the video, are aghast at what they're seeing. There's an excited utterance on the Exhibit E tape saying, screaming, he's running over his foot. You can hear it clear as day. You can hear it said multiple times, you ran over his foot, you ran over his foot. That's said with a bit calmer, I think it was somebody else, but one is clearly an excited utterance just based on the tone. You also, at the end of the other video that plaintiffs put into the summary judgment record, at the end of the video, after Mr. Douglas is put into the prisoner van, you see the camera person zoom in on DeFrancesca on his scooter and say, that guy should not be working. That guy should not be on the force. He just ran over, he called him a photographer. He mistook Mr. Douglas for a photographer. But multiple people on the scene cannot believe what they're seeing and cannot believe what was done with the scooter to Mr. Douglas and afterwards what was done. Another individual says, look at his blood on the street, look at his effing blood on the street. And he cannot believe what he just witnessed. So... I asked you to be more precise about the timing of the voice that's heard saying, he ran over his foot. When does that occur in relation... That occurs while he's on the ground. That's before he kicks over the scooter? In any event, it's substantially before he's arrested. I don't remember if it's while he's being arrested or if it's... But it's while he's on the ground. It's while he's on the ground and after the scooter moved forward and ran over his ankle. But whether he said he ran over his foot prior to when he kicked it, I'm sorry, Judge, I don't remember the precise second that it occurred. The whole incident occurred within a relatively short duration. He got hit by the scooter, he was on the ground. A few seconds went by, the scooter went forward. From the time he got off the scooter, DeFrancesca, was moving the crowd back on his own. And he was the only one who thought it was necessary to do it at that point. There was no crowd surging forward then. I think five or six seconds went by and I think it was during that period where the individual says, he's running over his foot, but if you'd like, I'll be happy to isolate that. The reason I'm concerned about the timing is that if this holler from the crowd that's audible on the tape occurred before he was arrested, it has a bearing on admissibility in that the fact that it was said in the crowd is relevant to giving knowledge, giving awareness to DeFrancesca. Even if DeFrancesca was not aware of it from his own pushing the scooter, he would be aware of it, or arguably aware of it. It's not my claim at all that it bears upon whether DeFrancesca heard him say it. You offered a reason for its admissibility. You said an excited utterance. An excited utterance that this act was in fact done, that he ran over his ankle. I'm talking about the admissibility of it as another possible basis for its admissibility. That it goes to the state of mind of DeFrancesca. That's possible. That's possible. That was not the reason that I had put it into the summary judgment record, but that's yet another potential use for it indeed. Anyway, the only thing that once the crowd became aghast at what they were seeing, only then do you see something being thrown from the crowd. Some white garbage bag comes from behind the camera and lands at the feet of a plainclothes police detective or chief of some sort. It plops down at his feet. You don't see who threw it. You don't see if it was a demonstrator who threw it or if a cop saw something and tossed it himself in there. But then police go onto the sidewalk and drag out some civilians and place them under arrest. But at no point anywhere on the footage do you see any civilians doing anything violent to the police. Now, getting just to the plaintiff's Monell claim for a second, you do see on this date in question numerous acts of significant violence by the police who are on the scene in significant force and particularly by the scooter officers. And you have testimony by all three of the non-party witnesses. By the last one, Marino, on his audio tape, which has some static, but it's clear he says that police were using the scooters to move people. Everybody got hit by the scooters. Mr. Beadle and Mr. Schwartz said the police were acting with significant aggression that day, including with the scooters. And you can assume that it was considered appropriate by the higher-ups in the police department since you had the very highest-level chiefs on scene commanding themselves. The plaintiff fell into the chief of patrol and got his blood, you can see it on one of the videos, smeared all down his crisp white shirt before he was being put into the wagon. That's how you get to potential city liability, is what you're saying, of the city itself. Well, yes, the combination of things. That the use of aggression and violence was widespread on that day, and that's enough by itself. But in conjunction with that, you have very high-level chiefs who are on the scene and they're doing that anyway. It's not as though they're in some darkened corner of the Bronx and there's no high-level officers around. This was a significant NYPD mobilization. They came out there expecting a crowd. We have your argument. If you want to finish your sentence, go ahead. They came out expecting a crowd for Occupy Wall Street. They were prepared for it. They had their helmets, they had their riot gear and their scooters. Nothing there was a surprise to them on that morning. Thank you. Thank you, Your Honor. Thank you both for your arguments. The court will reserve decision. The clerk will adjourn court. Court is adjourned.